02-11-434-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00434-CV


 
 
 Patricia Palmer
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
  
 
 
 
 
 Performing Arts Fort Worth, Inc.
 
 
  
 
 
 APPELLEE
 
 


----------

FROM THE 352nd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

Appellant
Patricia Palmer appeals the trial court’s order granting summary judgment in
favor of appellee Performing Arts Fort Worth, Inc.  We affirm.

Background
Facts

Performing
Arts, which owns and operates Bass Hall, has a license from the Board of
Directors of Tax Increment Reinvestment Zone Number Three, City of Fort Worth,
Texas (TIRZ) allowing its patrons to use a parking garage across the street
from the hall during performances.[2]  The
license agreement allows Performing Arts to grant patrons of Bass Hall “access
to the Garage during the ‘Permitted Hours’” to park their cars during the
performances.  The lease limits the number of parking spaces patrons may use to
700, states that Performing Arts “shall be responsible, at [its] sole expense,
for facilitating the orderly entry and exit of Patrons to the Garage,” and that
Performing Arts “shall bear the cost of and be solely responsible, and shall
contract with third parties reasonably acceptable to [Crescent], for any
additional staffing, attendants, or security required or reasonably requested
by [Crescent] in connection with parking coordination for Patrons’ use of the Garage.”

Palmer
attended a performance at Bass Hall on November 4, 2007.  She parked her car in
the parking garage and attended the performance across the street.  While
returning to her car after the performance, Palmer stepped off a curb in the
parking garage and fell, injuring her ankle and shoulder.

Palmer
sued Performing Arts for negligence for the allegedly hazardous and dangerous
condition on the property.  Performing Arts filed a traditional and no evidence
motion for summary judgment.  Performing Arts argued under the traditional
summary judgment standard that Palmer’s negligence claim fails as a matter of
law because she should have asserted a premises liability claim, but did not. 
In its no-evidence argument, Performing Arts argued that Palmer has produced no
evidence to support any of the elements of a negligence claim.

Palmer
responded and objected to Performing Arts’s motion as untimely under the trial
court’s scheduling order.  The scheduling order required that dispositive
motions be filed by September 15, 2010, and Performing Arts did not file its
motion until June 17, 2011.  Palmer’s response addressed Performing Arts’s
no-evidence arguments, but it did not address the argument that Palmer filed a
negligence claim but should have filed a premises liability claim.  It did,
however, refer to the case as a “premises case[].”

After
a hearing in July, 2011, the trial court granted Performing Arts’s traditional
and no-evidence summary judgment motions.  On September 19, 2011, Palmer filed
an objection to the trial court’s failure to rule on her objection to the
timeliness of Performing Arts’s summary judgment motion.  That same day, the
trial court overruled Palmer’s objection.  Palmer then filed this appeal.

Discussion

    
I.       
Scheduling Order

In
her first issue, Palmer argues that summary judgment is improper because the
motion was filed (1) during her attorney’s vacation; (2) after the court’s
established deadline for dispositive motions; and (3) without permission or
leave from the court.

A. 
Attorney’s vacation

Palmer
complains that Performing Arts filed the motion for summary judgment during her
attorney’s vacation, and the court scheduled the hearing for the day before he
was to return.  Palmer’s attorney submitted a letter to the court indicating
that he would be on vacation from June 20, 2011 to July 15, 2011.  Palmer
argues that the trial court should “accommodate attorney vacations” and it
erred when it “impliedly modified its scheduling order without notice to the
parties.”

Local
rules stipulate that resetting a trial date because of an attorney’s vacation
is at the court’s discretion and that the attorney is to notify the court of
his unavailability as soon as the trial setting is received.  Tarrant (Tex.)
Civ. Dist. Ct. Loc. R. 1.11.  Performing Arts filed its motion for summary
judgment on June 17, 2011, three days before Palmer’s attorney’s vacation.  Palmer
filed her response on July 8, 2011, and her counsel attended the hearing.  Palmer
raised no objection nor provided any notice of unavailability to the trial
court.  See In re Estate of Henry, 250 S.W.3d 518, 527 (Tex. App.—Dallas
2008, no pet.) (holding that trial court did not abuse its discretion by implicitly
modifying its scheduling order by allowing a late-filed amended pleading because
“[a]lthough appellee asserted ‘surprise,’ he [did] not claim he did not receive
adequate notice and opportunity to respond”).  Because Palmer did not complain
to the trial court that the hearing interfered with her attorney’s vacation, we
cannot say that the trial court abused its discretion by holding the hearing.

B. 
Deadline for motions

Palmer
also complains that the motion was filed after the deadline set forth in the trial
court’s scheduling order.  The court has the “inherent right to change or
modify any interlocutory order or judgment down to the time when the judgment
on the merits of the case becomes final.”  Hill v. W. E. Brittain, Inc.,
405 S.W.2d 803, 808 (Tex. Civ. App.—Fort Worth 1966, no. writ.) (citing Bachman
Ctr. Corp. v. State, 359 S.W.2d 290, 292 (Tex. Civ. App.—Dallas 1962, writ
ref’d n.r.e.)).  Rule 166 of the Texas Rules of Civil Procedure states that the
court shall issue an order at the pretrial conference, and “such order
. . . shall control the subsequent course of the action.”  Tex. R.
Civ. P. 166.  The rule also directs courts to dispose of cases without “undue
expense or burden,” id., and courts may modify an order to prevent
manifest injustice, see Trevino v. Trevino, 64 S.W.3d 166, 170 (Tex.
App.—San Antonio 2001, no pet.).  The court may modify by affirmative direction, a written order, an
oral direction in the record, Susanoil, Inc. v. Cont’l Oil Co., 516
S.W.2d 260, 264 (Tex. Civ. App.—San Antonio 1973, no writ.), or by implicit
modification, such as setting a hearing, Trevino, 64 S.W.3d at 170; Ocean
Transp., Inc. v. Greycas, Inc., 878 S.W.2d 256, 262 (Tex. App.—Corpus
Christi 1994, writ denied).  Therefore, the trial court was within its
discretion to implicitly modify the scheduling order by setting Performing
Arts’s motion for a hearing.

C. 
Permission from the court

Finally,
Palmer argues that Performing Arts filed its late motion without permission or
leave from the court.  Often, courts will allow a late filed motion in order to
prevent an unnecessary trial.  Trevino, 64 S.W.3d at 170.  Given the
wide discretion of the trial court in managing its docket, absent a showing of
clear abuse, we will not interfere with the exercise of that discretion.  Id.
(citing Clanton v. Clark, 639 S.W.2d 929, 931 (Tex. 1982)).  Because
Palmer received adequate notice and an opportunity to respond, the trial court
did not abuse its discretion by allowing the late submission of the motion.[3]  We overrule her
first issue.

   II.       
No-evidence Summary Judgment

In
her third issue, Palmer argues that the trial court erred by granting
Performing Arts’s no-evidence summary judgment because she submitted sufficient
evidence to substantiate a premises liability cause of action.

We
review a summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315
S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light
most favorable to the nonmovant, crediting evidence favorable to the nonmovant
if reasonable jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge
every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A defendant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim.  Frost Nat’l Bank v. Fernandez,
315 S.W.3d 494, 508 (Tex. 2010); see Tex. R. Civ. P. 166a(b), (c).

When
a party moves for summary judgment under both rules 166a(c) and 166a(i), we
will first review the trial court’s judgment under the standards of rule
166a(i).  Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). 
If the appellant failed to produce more than a scintilla of evidence under that
burden, then there is no need to analyze whether the appellee’s summary
judgment proof satisfied the less stringent rule 166a(c) burden.  Id.

When
reviewing a no-evidence summary judgment, we examine the entire record in the
light most favorable to the nonmovant, indulging every reasonable inference and
resolving any doubts against the motion.  Sudan v. Sudan, 199 S.W.3d
291, 292 (Tex. 2006).  We review a no-evidence summary judgment for evidence
that would enable reasonable and fair-minded jurors to differ in their
conclusions.  Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008) (citing
City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).  We credit
evidence favorable to the nonmovant if reasonable jurors could, and we
disregard evidence contrary to the nonmovant unless reasonable jurors could
not.  Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009) (quoting
Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006)).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no-evidence summary judgment is
not proper.  Smith v. O’Donnell, 288 S.W.3d 417, 424 (Tex. 2009); King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert. denied,
541 U.S. 1030 (2004).

To
prevail under a premises liability claim,[4]
Palmer must prove that (1) Performing Arts owed a duty to Palmer; (2) Performing
Arts was a possessor of the premises; (3) the curb constituted an unreasonable
risk of harm; (4) Performing Arts knew or reasonably should have known of the
condition of the curb; (5) Performing Arts failed to exercise reasonable care
to protect Palmer from danger; and (6) Performing Arts’s failure was the
proximate cause of the injury to Palmer.  See Del Lago Partners v. Smith,
307 S.W.3d 762, 788 (Tex. 2010); Fort Brown Villas III Condo. Ass’n v.
Gillenwater, 285 S.W.3d 879, 883 (Tex. 2009).

In
general, “a person who does not own or possess property assumes no liability
for injury under a premises liability theory, unless he assumes control over,
and responsibility for, the premises.”  Villegas v. Tex. Dep’t of Transp.,
120 S.W.3d 26, 38 (Tex. App.—San Antonio 2003, pet. denied) (quoting Rendleman
v. Clarke, 909 S.W.2d 56, 60 (Tex. App.—Houston [14th Dist.] 1995, writ
dism’d as moot)).  “The relevant inquiry is whether the defendant assumed
sufficient control over the part of the premises that presented the alleged
danger so that the defendant had the responsibility to remedy it.”  Cnty. of
Cameron v. Brown, 80 S.W.3d 549, 556 (Tex. 2002).  Control is “the power or
authority to manage, direct, superintend, restrict, regulate, govern,
administer, or oversee.”  Gunn v. Harris Methodist Affiliated Hosps.,
887 S.W.2d 248, 252 (Tex. App.—Fort Worth 1994, writ denied).  Occupation of a
premises is not synonymous with control; a party may occupy a premises “in
whole or in part, without actually controlling it.”  Id. at 251
(refusing to “focus[] on the term ‘occupy’” but looking to control to determine
whether defendant was a possessor).

Palmer
argues that Performing Arts was a possessor of the premises because Performing
Arts had a license to use the garage and, according to the contract, assumed
responsibility for the entry and exit of the patrons to the garage.  Palmer
also claims that Performing Arts was responsible for the garage security and
staffed the garage for this purpose.

The
license agreement, which is the basis of Palmer’s argument that Performing Arts
was a possessor or occupier of the garage at the time of Palmer’s accident,
expressly limited Performing Arts’s right of use and access to the garage.  It
was allowed to “use the Garage only in accordance with Landlord’s rules and
regulations.”  Performing Arts was given a license to use 700 parking spaces
for patron parking and “for no other use.”  These spaces could only be used at
certain times and on specific days, and even then Performing Arts had to yield
to the “Landlord’s major tenant.”  During the “Permitted Hours” of Performing
Arts’s use, other parties continued to use portions of the garage.  A schedule
attached to the license agreement specifically reserved ninety spaces for
another tenant who was not Performing Arts or TIRZ.

Crescent,
as the owner of the garage, expressly reserved the right “[t]o decorate and to
make repairs, alterations, additions, changes or improvements, whether
structural or otherwise, in, about[,] or on Garage” and the right to “prohibit
all signs, posters, advertisements, or notices from being painted or affixed or
displayed on any portion of the Garage.”  Performing Arts had “no authority or
power, express or implied, to create or cause any mechanic’s or materialmen’s
lien, charge or encumbrance of any kind against the Garage or any portion
thereof.”  Performing Arts was only required to pay the cost of repairs for damage
done by it or its patrons, agents, contractors, or employees.  Performing Arts
could “review and comment upon any alterations to the Garage proposed by [TIRZ]
and permitted under the Lease, but [Performing Arts had] no obligations with
regard to the expense of such alterations.”

Performing
Arts was only allowed to use 700 spaces in the garage and other tenants
continued to use other portions during Performing Arts’s permitted hours. 
Thus, by the plain language of the contract, Performing Arts did not have
exclusive control of the parking garage.  Further, Performing Arts had no duty
to inspect, maintain, or repair the garage.  In fact, Performing Arts could not
make any “repairs, alterations, additions, changes or improvements” to the
garage and could not put up any signs or notices in the garage.  Cf. Levesque
v. Wilkens, 57 S.W.3d 499, 505 (Tex. App.—Houston [14th Dist.] 2001, no
pet.) (holding that lessee maintained control over the premises when the lessor
reserved no rights in the contract to enter onto the property during the lease
term).

After
reviewing the summary judgment evidence, we cannot say that Performing Arts’s
use of the garage was such that it had control over the curb where Palmer fell
and thereby owed Palmer a duty of reasonable care.  See Gunn, 887 S.W.2d
at 251–52 (upholding summary judgment on a premises liability claim because, despite
admission that defendant occupied the premises, the evidence “easily infer[red]
a lack of control”).  Because Performing Arts conclusively negated at least one
essential element of Palmer’s cause of action, the trial court did not err by
granting summary judgment on her claim against Performing Arts.  See Frost
Nat’l Bank, 315 S.W.3d at 508.  We overrule her third issue.  Because we
uphold the trial court’s judgment on Performing Arts’s no-evidence summary
judgment, we do not need to reach Palmer’s second issue.  See Tex. R.
App. P. 47.1.

Conclusion

Having
overruled Palmer’s dispositive issues, we affirm the trial court’s judgment.

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
MCCOY,
MEIER, and GABRIEL, JJ.

 

DELIVERED:  July 19, 2012








 









[1]See Tex. R. App. P. 47.4.





[2]Crescent Real Estate
Funding, L.P. is the owner of the garage.  Crescent leased the garage to TIRZ,
which in turn granted Performing Arts a license to the garage pursuant to a
license agreement dated April 22, 1999.  Neither Crescent nor TIRZ was a party
to this lawsuit.





[3]At oral argument, Palmer
argued that it was also an abuse of discretion for the trial court to hear
Performing Arts’s motion because it had denied her motion for an expert witness
as untimely.  Palmer makes no argument or citation in support of this claim in
her response to the motion for summary judgment or in her brief on appeal.  An
appellate court cannot reverse based on “unassigned error,” i.e., a ground not
presented in the appellate briefs.  Pat Baker Co. v. Wilson, 971 S.W.2d
447, 450 (Tex. 1998); see Tex. R. App. P. 53.2(f); Sonat Exploration
Co. v. Cudd Pressure Control, Inc., 271 S.W.3d 228, 236 (Tex. 2008).  We
therefore do not address this argument.





[4]Performing Arts challenged
Palmer’s negligence cause of action and argued that Palmer’s stated claim was
more properly construed as a premises liability claim.  On appeal Palmer
addressed only premises liability, and Performing Arts responded that even if
construed as a premises liability claim, Palmer failed to meet the elements.  Therefore,
we consider the issue as argued and do not discuss Palmer’s negligence claim.