

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-11-00434-CV

PATRICIA PALMER                                                    APPELLANT

V.

PERFORMING ARTS FORT                                              APPELLEE
WORTH, INC.

----------

## FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## Introduction

Appellant Patricia Palmer appeals the trial court's order granting summary

judgment in favor of appellee Performing Arts Fort Worth, Inc.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts

Performing Arts, which owns and operates Bass Hall, has a license from the Board of Directors of Tax Increment Reinvestment Zone Number Three, City of Fort Worth, Texas (TIRZ) allowing its patrons to use a parking garage across the street from the hall during performances.[2] The license agreement allows Performing Arts to grant patrons of Bass Hall "access to the Garage during the 'Permitted Hours'" to park their cars during the performances. The lease limits the number of parking spaces patrons may use to 700, states that Performing Arts "shall be responsible, at [its] sole expense, for facilitating the orderly entry and exit of Patrons to the Garage," and that Performing Arts "shall bear the cost of and be solely responsible, and shall contract with third parties reasonably acceptable to [Crescent], for any additional staffing, attendants, or security required or reasonably requested by [Crescent] in connection with parking coordination for Patrons' use of the Garage."

Palmer attended a performance at Bass Hall on November 4, 2007. She parked her car in the parking garage and attended the performance across the street. While returning to her car after the performance, Palmer stepped off a curb in the parking garage and fell, injuring her ankle and shoulder.

---

[2]Crescent Real Estate Funding, L.P. is the owner of the garage. Crescent leased the garage to TIRZ, which in turn granted Performing Arts a license to the garage pursuant to a license agreement dated April 22, 1999. Neither Crescent nor TIRZ was a party to this lawsuit.

Palmer sued Performing Arts for negligence for the allegedly hazardous and dangerous condition on the property. Performing Arts filed a traditional and no evidence motion for summary judgment. Performing Arts argued under the traditional summary judgment standard that Palmer's negligence claim fails as a matter of law because she should have asserted a premises liability claim, but did not. In its no-evidence argument, Performing Arts argued that Palmer has produced no evidence to support any of the elements of a negligence claim.

Palmer responded and objected to Performing Arts's motion as untimely under the trial court's scheduling order. The scheduling order required that dispositive motions be filed by September 15, 2010, and Performing Arts did not file its motion until June 17, 2011. Palmer's response addressed Performing Arts's no-evidence arguments, but it did not address the argument that Palmer filed a negligence claim but should have filed a premises liability claim. It did, however, refer to the case as a "premises case[]."

After a hearing in July, 2011, the trial court granted Performing Arts's traditional and no-evidence summary judgment motions. On September 19, 2011, Palmer filed an objection to the trial court's failure to rule on her objection to the timeliness of Performing Arts's summary judgment motion. That same day, the trial court overruled Palmer's objection. Palmer then filed this appeal.

## Discussion

### I. Scheduling Order

In her first issue, Palmer argues that summary judgment is improper because the motion was filed (1) during her attorney's vacation; (2) after the court's established deadline for dispositive motions; and (3) without permission or leave from the court.

#### *A. Attorney's vacation*

Palmer complains that Performing Arts filed the motion for summary judgment during her attorney's vacation, and the court scheduled the hearing for the day before he was to return. Palmer's attorney submitted a letter to the court indicating that he would be on vacation from June 20, 2011 to July 15, 2011. Palmer argues that the trial court should "accommodate attorney vacations" and it erred when it "impliedly modified its scheduling order without notice to the parties."

Local rules stipulate that resetting a trial date because of an attorney's vacation is at the court's discretion and that the attorney is to notify the court of his unavailability as soon as the trial setting is received. Tarrant (Tex.) Civ. Dist. Ct. Loc. R. 1.11. Performing Arts filed its motion for summary judgment on June 17, 2011, three days before Palmer's attorney's vacation. Palmer filed her response on July 8, 2011, and her counsel attended the hearing. Palmer raised no objection nor provided any notice of unavailability to the trial court. *See In re Estate of Henry*, 250 S.W.3d 518, 527 (Tex. App.—Dallas 2008, no pet.) (holding

4

that trial court did not abuse its discretion by implicitly modifying its scheduling order by allowing a late-filed amended pleading because "[a]lthough appellee asserted 'surprise,' he [did] not claim he did not receive adequate notice and opportunity to respond"). Because Palmer did not complain to the trial court that the hearing interfered with her attorney's vacation, we cannot say that the trial court abused its discretion by holding the hearing.

### B. Deadline for motions

Palmer also complains that the motion was filed after the deadline set forth in the trial court's scheduling order. The court has the "inherent right to change or modify any interlocutory order or judgment down to the time when the judgment on the merits of the case becomes final." *Hill v. W. E. Brittain, Inc.*, 405 S.W.2d 803, 808 (Tex. Civ. App.—Fort Worth 1966, no. writ.) (citing *Bachman Ctr. Corp. v. State*, 359 S.W.2d 290, 292 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.)). Rule 166 of the Texas Rules of Civil Procedure states that the court shall issue an order at the pretrial conference, and "such order . . . shall control the subsequent course of the action." Tex. R. Civ. P. 166. The rule also directs courts to dispose of cases without "undue expense or burden," *id*., and courts may modify an order to prevent manifest injustice, *see Trevino v. Trevino*, 64 S.W.3d 166, 170 (Tex. App.—San Antonio 2001, no pet.). The court may modify by affirmative direction, a written order, an oral direction in the record, *Susanoil, Inc. v. Cont'l Oil Co.*, 516 S.W.2d 260, 264 (Tex. Civ. App.—San Antonio 1973, no writ.), or by implicit modification, such as setting a hearing, *Trevino*, 64

S.W.3d at 170; *Ocean Transp., Inc. v. Greycas, Inc.*, 878 S.W.2d 256, 262 (Tex. App.—Corpus Christi 1994, writ denied).  Therefore, the trial court was within its discretion to implicitly modify the scheduling order by setting Performing Arts's motion for a hearing.

### C. Permission from the court

Finally, Palmer argues that Performing Arts filed its late motion without permission or leave from the court.  Often, courts will allow a late filed motion in order to prevent an unnecessary trial.  *Trevino*, 64 S.W.3d at 170.  Given the wide discretion of the trial court in managing its docket, absent a showing of clear abuse, we will not interfere with the exercise of that discretion.  *Id.* (citing *Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982)).  Because Palmer received adequate notice and an opportunity to respond, the trial court did not abuse its discretion by allowing the late submission of the motion.[3]  We overrule her first issue.

---

[3]At oral argument, Palmer argued that it was also an abuse of discretion for the trial court to hear Performing Arts's motion because it had denied her motion for an expert witness as untimely.  Palmer makes no argument or citation in support of this claim in her response to the motion for summary judgment or in her brief on appeal.  An appellate court cannot reverse based on "unassigned error," i.e., a ground not presented in the appellate briefs.  *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998); *see* Tex. R. App. P. 53.2(f); *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 236 (Tex. 2008).  We therefore do not address this argument.

## II. No-evidence Summary Judgment

In her third issue, Palmer argues that the trial court erred by granting Performing Arts's no-evidence summary judgment because she submitted sufficient evidence to substantiate a premises liability cause of action.

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden. *Id.*

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

To prevail under a premises liability claim,[4] Palmer must prove that (1) Performing Arts owed a duty to Palmer; (2) Performing Arts was a possessor of the premises; (3) the curb constituted an unreasonable risk of harm; (4)

---

[4]Performing Arts challenged Palmer's negligence cause of action and argued that Palmer's stated claim was more properly construed as a premises liability claim. On appeal Palmer addressed only premises liability, and Performing Arts responded that even if construed as a premises liability claim, Palmer failed to meet the elements. Therefore, we consider the issue as argued and do not discuss Palmer's negligence claim.

8

Performing Arts knew or reasonably should have known of the condition of the curb; (5) Performing Arts failed to exercise reasonable care to protect Palmer from danger; and (6) Performing Arts's failure was the proximate cause of the injury to Palmer. *See Del Lago Partners v. Smith*, 307 S.W.3d 762, 788 (Tex. 2010); *Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 883 (Tex. 2009).

In general, "a person who does not own or possess property assumes no liability for injury under a premises liability theory, unless he assumes control over, and responsibility for, the premises." *Villegas v. Tex. Dep't of Transp.*, 120 S.W.3d 26, 38 (Tex. App.—San Antonio 2003, pet. denied) (quoting *Rendleman v. Clarke*, 909 S.W.2d 56, 60 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd as moot)). "The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it." *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). Control is "the power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." *Gunn v. Harris Methodist Affiliated Hosps.*, 887 S.W.2d 248, 252 (Tex. App.—Fort Worth 1994, writ denied). Occupation of a premises is not synonymous with control; a party may occupy a premises "in whole or in part, without actually controlling it." *Id.* at 251 (refusing to "focus[] on the term 'occupy'" but looking to control to determine whether defendant was a possessor).

9

Palmer argues that Performing Arts was a possessor of the premises because Performing Arts had a license to use the garage and, according to the contract, assumed responsibility for the entry and exit of the patrons to the garage. Palmer also claims that Performing Arts was responsible for the garage security and staffed the garage for this purpose.

The license agreement, which is the basis of Palmer's argument that Performing Arts was a possessor or occupier of the garage at the time of Palmer's accident, expressly limited Performing Arts's right of use and access to the garage. It was allowed to "use the Garage only in accordance with Landlord's rules and regulations." Performing Arts was given a license to use 700 parking spaces for patron parking and "for no other use." These spaces could only be used at certain times and on specific days, and even then Performing Arts had to yield to the "Landlord's major tenant." During the "Permitted Hours" of Performing Arts's use, other parties continued to use portions of the garage. A schedule attached to the license agreement specifically reserved ninety spaces for another tenant who was not Performing Arts or TIRZ.

Crescent, as the owner of the garage, expressly reserved the right "[t]o decorate and to make repairs, alterations, additions, changes or improvements, whether structural or otherwise, in, about[,] or on Garage" and the right to "prohibit all signs, posters, advertisements, or notices from being painted or affixed or displayed on any portion of the Garage." Performing Arts had "no authority or power, express or implied, to create or cause any mechanic's or

materialmen's lien, charge or encumbrance of any kind against the Garage or any portion thereof." Performing Arts was only required to pay the cost of repairs for damage done by it or its patrons, agents, contractors, or employees. Performing Arts could "review and comment upon any alterations to the Garage proposed by [TIRZ] and permitted under the Lease, but [Performing Arts had] no obligations with regard to the expense of such alterations."

Performing Arts was only allowed to use 700 spaces in the garage and other tenants continued to use other portions during Performing Arts's permitted hours. Thus, by the plain language of the contract, Performing Arts did not have exclusive control of the parking garage. Further, Performing Arts had no duty to inspect, maintain, or repair the garage. In fact, Performing Arts could not make any "repairs, alterations, additions, changes or improvements" to the garage and could not put up any signs or notices in the garage. *Cf. Levesque v. Wilkens*, 57 S.W.3d 499, 505 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that lessee maintained control over the premises when the lessor reserved no rights in the contract to enter onto the property during the lease term).

After reviewing the summary judgment evidence, we cannot say that Performing Arts's use of the garage was such that it had control over the curb where Palmer fell and thereby owed Palmer a duty of reasonable care. *See Gunn*, 887 S.W.2d at 251–52 (upholding summary judgment on a premises liability claim because, despite admission that defendant occupied the premises, the evidence "easily infer[red] a lack of control"). Because Performing Arts

11

conclusively negated at least one essential element of Palmer's cause of action, the trial court did not err by granting summary judgment on her claim against Performing Arts. *See Frost Nat'l Bank*, 315 S.W.3d at 508. We overrule her third issue. Because we uphold the trial court's judgment on Performing Arts's no-evidence summary judgment, we do not need to reach Palmer's second issue. *See* Tex. R. App. P. 47.1.

## Conclusion

Having overruled Palmer's dispositive issues, we affirm the trial court's judgment.

LEE GABRIEL<br>
JUSTICE

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DELIVERED:  July 19, 2012

12