**In the Matter of the ESTATE OF Noka P. HENRY, Deceased.**

**No. 05–07–00723–CV.**

Court of Appeals of Texas, Dallas.

April 11, 2008.

Brian G. Dicus, Glast, Phillips & Murray, P.C., Dallas, for Appellant.

Paul R. Leake, Paul R. Leake, Atty. at Law, Mesquite, for Appellee.

Before Justices MORRIS, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

This appeal involves a will contest. From June 1987 until her death in June 2005, the deceased, Noka P. Henry, was married to Thomas D. Henry ("Thomas Henry"). Thomas Henry survived Ms. Henry and died in November 2006. Dwayne L. Phillips, Mary K. Roach, and Lisa R. Phillips ("appellants") are children of Ms. Henry from a previous marriage. The appellee is Paul S. Henry, a son of Thomas Henry from a previous marriage, acting as independent executor of the Estate of Thomas D. Henry.

After a bench trial, the probate court ordered admission to probate of an Octo-ber 19, 2004 will of Ms. Henry that had been originally offered for probate by Thomas Henry, denied admission to probate of a November 12, 1996 will of Ms. Henry, and awarded attorney's fees of $12,000 to appellants to be paid by Ms. Henry's estate. Appellants present two issues on appeal. First, appellants contend the probate court erred by granting appellee's application to probate the October 19, 2004 will of Ms. Henry because that will was executed as a result of undue influence. Second, appellants contend the probate court erred in denying the application to probate the November 12, 1996 will, as that was the last valid will of Ms. Henry. The essence of appellants' position on these issues is that the evidence was "factually insufficient to support the ruling, and the great weight of the evidence supported a finding" in appellants' favor with respect to both issues. Appellee's cross-point asserts the probate court "abused its discretion in awarding attorney's fees and costs of $12,000.00 against the Estate, pursuant to Section 243 of the Texas Probate Code."

After reviewing the record in its entirety, we conclude the evidence is factually sufficient to support the probate court's order admitting the October 19, 2004 will to probate and denying admission to probate of the November 12, 1996 will. Further, we conclude the probate court did not abuse its discretion by awarding attorney's fees to appellants' attorney. Appellants' points and appellee's cross-point are decided against them. The probate court's order is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the time of her marriage to Thomas Henry in 1987, Ms. Henry had four children from a previous marriage: Mr. Phillips, Ms. Roach, Ms. Phillips, and Charla

Brantley.[1] Thomas Henry, who was fourteen years older than Ms. Henry, had two living children from a previous marriage, Michael L. Henry and Paul S. Henry.

In 1996, Thomas Henry and Ms. Henry executed a "Revocable Living Trust Agreement." The named beneficiaries designated to receive portions of the net income and principal of the trust created in that agreement upon the death of Thomas Henry and Ms. Henry included Ms. Henry's four children from her previous marriage, Thomas Henry's two sons from his previous marriage, and a daughter-in-law of Thomas Henry. On November 12, 1996, Ms. Henry executed a "Last Will and Testament (Pour–Over Will)" (the "1996 will") that essentially left all of her property to the trust created in the 1996 revocable living trust agreement.

In 2004, Thomas Henry and Ms. Henry met with Warren Nystrom, an attorney whose practice included estate planning and preparation of wills. On October 19, 2004, at the office of Warren Nystrom, Ms. Henry executed a "Last Will and Testament" (the "2004 will") that provided in relevant part:

> If my husband, THOMAS D. HENRY, survives me, I give, devise and bequeath all of my estate of whatsoever kind and wheresoever situated to my husband, THOMAS D. HENRY. If my husband, THOMAS D. HENRY, does not survive me, I give, devise and bequeath all of my estate to my children, CHARLA J. TREADWAY, MARY K. ROACH, DWAYNE L. PHILLIPS, and LISA R. PHILLIPS, in equal shares; . . . .

(emphasis original).

Following Ms. Henry's death, an application for probate of the 1996 will was filed in the probate court on April 6, 2006 by Ms. Henry's four children from her previous marriage ("contestants"). On May 26, 2006, Thomas Henry filed an opposition to probate of the 1996 will. In addition, on June 20, 2006, Thomas Henry filed a counter application for probate of Ms. Henry's 2004 will. Contestants filed an "Opposition and Contest to Probate of Purported Will" on June 30, 2006, alleging probate of the 2004 will should be denied due to "undue influence" by Thomas Henry "and likely other people as well."

A "Memorandum of Informal Docket Control Pre-trial Order" was agreed to by the parties and signed by the probate court judge on August 23, 2006. That memorandum set a trial date of February 5, 2007 and provided that the deadline to file amended pleadings was January 22, 2007. On October 3, 2006, Thomas Henry filed a "First Amended Counter Application for Probate of Will as a Muniment of Title."

Upon Thomas Henry's November 2006 death, appellee was substituted in the pending litigation. A "Second Amended Counter Application to Probate Will as a Muniment of Title" was filed by appellee on January 26, 2007. On March 1, 2007, appellee filed a motion for summary judgment and no evidence summary judgment on the issues of testamentary capacity and undue influence with respect to Ms. Henry's 2004 will. Appellee asserted that "there is *no* evidence to establish that the late Noka P. Henry was unduly influenced by Thomas D. Henry, or anyone acting on Thomas D. Henry's behalf, and Proponent is therefore entitled to judgment as a matter of law on this issue." (emphasis original). Contestants filed a response to appellee's motion for summary judgment on March 19, 2007, citing affidavits and responses to interrogatories that they ar-

---

1. Charla Brantley is also referred to in the record as Charla J. Treadway.

gued raised a fact issue as to undue influence.

Pursuant to an April 2, 2007 motion for continuance filed by contestants, trial was rescheduled to April 30, 2007. On April 4, 2007, the probate court granted appellee's motion for summary judgment and no evidence summary judgment as to testamentary capacity, but denied appellee's motion with respect to undue influence. On April 20, 2007, contestants filed a "First Amended Opposition and Contest to Probate a Purported Will," in which they asserted for the first time a request for recovery of attorney's fees and expenses pursuant to section 243 of the Texas Probate Code. On April 24, 2007, appellee filed a motion to strike that pleading, asserting surprise and contending the pleading was "filed in violation of the Court's previous Pre-trial Order."

Trial commenced April 30, 2007 and concluded May 2, 2007. At trial, the probate court noted appellee's objections to contestants' request for attorney's fees and expenses, but did not strike the request or the April 20,2007 amended pleading. On May 14, 2007, the probate court issued an "Order Admitting Will to Probate as a Muniment of Title." In that order, the probate court stated that appellee's second amended application to probate the 2004 will "should be in all things Granted." Contestants' application to probate the 1996 will was denied. Further, the probate court awarded contestants' attorney "the sum of $12,000.00 as necessary and reasonable attorney's fees for presenting the probate of the 1996 Will, in good faith, under Section 243 of the Texas Probate Code." This appeal was timely filed on June 13, 2007.

## II. UNDUE INFLUENCE

In their first issue, appellants contend, "The [probate court] erred in granting the proponent's second amended application to probate the 2004 will of the decedent, as it was executed as a result of undue influence exerted upon the decedent; the evidence was factually insufficient to support the ruling, and the great weight of the evidence supported a finding of undue influence." Appellants "urge that the [probate court] should be reversed on its ruling that [Ms. Henry] did not execute the 2004 Will as a result of undue influence." Appellee asserts appellants failed to establish Ms. Henry was unduly influenced to make her 2004 will.

### A. Standard of Review

In a trial where no findings of fact or conclusions of law are filed, the trial court's judgment implies all necessary findings of fact to support it. *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex.1996). However, where, as here, a reporter's record is filed, those implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989).

When a party attacks the factual sufficiency of an adverse finding on an issue on which he or she has the burden of proof, the party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *In re Estate of Steed*, 152 S.W.3d 797, 806 (Tex.App.Texarkana 2004, pet. denied) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983)); *Long v. Long*, 196 S.W.3d 460, 466 (Tex.App.-Dal-

las 2006, no pet.). We are required to consider and weigh all of the evidence, and we can set aside a finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Steed,* 152 S.W.3d at 806; *see also Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). In conducting our review, we are mindful that the factfinder was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex. 2003). We will not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached. *Long,* 196 S.W.3d at 464.

### B. Applicable Law

▮ To justify setting aside a will because of undue influence, a contestant must prove the (1) existence and exertion of an influence (2) that subverted or overpowered the testator's mind at the time he executed the instrument (3) so that the testator executed an instrument he would not otherwise have executed but for such influence. *Id.* at 467; *Cotten v. Cotten,* 169 S.W.3d 824, 827 (Tex.App.-Dallas 2005, pet. denied). The exertion of undue influence cannot be inferred by opportunity alone. *Long,* 196 S.W.3d at 467. The evidence must show the influence was not only present, but in fact exerted with respect to the making of the testament itself. *Id.*

▮ The burden of proving undue influence is on the party contesting the execution of a testament. *Rothermel v. Duncan,* 369 S.W.2d 917, 922 (Tex.1963). It is therefore necessary for a contestant to introduce some tangible and satisfactory proof of the existence of each of the above-stated elements of undue influence. *Id.*

▮ The elements establishing undue influence may be proved by circumstantial, as well as by direct, evidence. *Id.* However, the circumstances relied on as establishing the elements of undue influence must be of a reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of the exercise of such influence. *Id.* "This is so because a solemn testament executed under the formalities required by law by one mentally capable of executing it should not be set aside upon a bare suspicion of wrongdoing." *Id.* at 922–23.

### C. Application of Law to Facts

▮ The parties do not dispute appellants bore the burden of establishing undue influence in this case. *See id.* at 922. Appellants argue the exertion of undue influence over Ms. Henry was clearly proved by the "uncontroverted" testimony of four witnesses: Ms. Phillips; Ms. Henry's granddaughter, Tonya Treadway; Ms. Henry's hairdresser, Charlotte Finley; and Sandra Fatheree, a friend of Ms. Henry. Appellants contend the testimony of these four witnesses was not "directly discredited at trial by any means whatsoever" and "should be considered as having direct application to the issue of undue influence."

Appellee asserts the record shows the testimony of Ms. Phillips and Tonya Treadway was "tainted" because they stood to gain if the 2004 will was not admitted to probate.[2] Further, appellee

---

2. In addition, appellee asserts the statements of Ms. Phillips are "hearsay about what her mother allegedly told her in private." At trial, appellee's objections to that effect were overruled by the probate court. For purposes of this analysis, we assume without deciding that the testimony of Ms. Phillips was properly admitted by the probate court.

argues the testimony of Ms. Finley and Ms. Fatheree was contradicted by other testimony in the record. Finally, appellee asserts "the most compelling witnesses in the case were two (2) disinterested witnesses, Warren Nystrom and his legal secretary, Vicki Feuerbacher," who testified respecting the drafting and execution of Ms. Henry's 2004 will.

The record reflects Ms. Phillips testified her mother, Ms. Henry, "said that she didn't want to sign [the 2004 will] because it left us totally out.... And she didn't want to leave us like that." Further, Ms. Philips testified she witnessed conversations in which Thomas Henry told Ms. Henry that if she didn't sign the 2004 will, "he would divorce her and she would get absolutely nothing." According to Ms. Phillips, Ms. Henry "wanted her estate to go to us kids, to her children," and "[Thomas Henry's] estate was going to his children."

Tonya Treadway, who lived with Ms. Henry and Thomas Henry, testified that the subject of changes to the 1996 will caused "friction" between Ms. Henry and Thomas Henry that made Ms. Henry physically ill. According to Tonya Treadway, Ms. Henry "was being asked to sign a second will that she didn't feel comfortable with."

Ms. Finley testified that prior to October 2004, Ms. Henry told her "the sons of her husband were trying to make her rewrite a will." According to Ms. Finley, "[Ms. Henry] would come into the shop, and she would talk about how [her husband's sons] were harassing her. And she would be so upset, she would have to be excused to go to the restroom, I mean, right off the bat." Ms. Finley testified she was very confident Ms. Henry was upset due to discussions about a will.

Ms. Fatheree testified Ms. Henry told her sometime after June 2003 that "she was being harassed to death, that she was receiving 20 phone calls a day or—and multiple visits a day." According to Ms. Fatheree, the calls and visits were being made by "Tom's boys" and had to do with them wanting Ms. Henry to sign a will. Ms. Fatheree testified Ms. Henry repeatedly told her "she was being very harassed."

Appellee points out to us that both Ms. Phillips and Tonya Treadway would benefit if the 2004 will was not admitted to probate. In such case, Ms. Phillips would receive a share of Ms. Henry's estate and Tonya Treadway would be able to continue living in the home Ms. Henry and Thomas Henry had shared. In addition, appellee points out that the record shows Tonya Treadway used a credit card of Thomas Henry's while he was hospitalized and immediately after his death.

Further, appellee suggests we consider that although appellants assert the testimony of Ms. Phillips, Tonya Treadway, Ms. Finley, and Ms. Featheree was "uncontroverted," the record shows: (1) Thomas Henry's sister, Wanda White, testified Ms. Henry "was real fond of" Thomas Henry's sons and did not mention conflicts with them; (2) Ms. Finley testified that after October 2004, Ms. Henry never told her she wanted to revoke or cancel the 2004 will; and (3) Paul S. Henry and Michael L. Henry both testified they did not make the phone calls described by Ms. Fatheree.

Finally, appellee cites us to the testimony of Mr. Nystrom and Ms. Feuerbacher, where they described in detail the facts surrounding the drafting and execution of the 2004 will. Although the process of drafting and executing the 2004 will took more than a month, Ms. Henry did not tell Mr. Nystrom or Ms. Feuerbacher that she was being coerced to make the 2004 will.

In fact, prior to the execution of the 2004 will, Ms. Henry sought and received counsel from another attorney who was not associated with Mr. Nystrom. Mr. Nystrom testified he arranged for Ms. Henry to sign the 2004 will outside the presence of Thomas Henry, with other witnesses present. According to Mr. Nystrom and Ms. Feuerbacher, at no time did Ms. Henry express concern about signing the 2004 will, and she appeared to be in good health on the day of signing. The record shows Ms. Henry did not contact Mr. Nystrom subsequent to execution of the 2004 will.

As noted above, the probate judge, as the fact-finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Golden Eagle Archery*, 116 S.W.3d at 761. Based on the entire record, we cannot conclude the probate court's implied finding of no undue influence is "so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *See Steed*, 152 S.W.3d at 806. Accordingly, the evidence is factually sufficient to support the probate court's order with respect to the granting of appellee's second amended application to probate Ms. Henry's 2004 will. Appellants' first issue is decided against them.

## III. CONSIDERATION OF 1996 WILL

In their second issue, appellants assert, "The [probate court] erred in denying the contestants' application to probate the 1996 will of the decedent, as that was the last valid will of the decedent; the evidence was factually insufficient to support the ruling, and the great weight of the evidence supported a finding that the 1996 will should be admitted to probate." Appellants contend that because the October 19, 2004 document at issue is not a valid will as a result of undue influence, there was no legal, effective revocation of the

1996 will in 2004, and the 1996 will should be considered for probate. In light of our resolution of appellants' first issue, we decide appellants' second issue against them.

## IV. ATTORNEY'S FEES AND COSTS

In his cross-point, appellee asserts the probate court abused its discretion in granting appellants' request for attorney's fees and costs pursuant to rule 243 of the Texas Probate Code. Appellee contends that because appellants did not timely file their amended pleading requesting such fees and costs in accordance with the probate court's scheduling order or seek leave of court to file such amended pleading, the probate court abused its discretion by "impliedly allowing" the amended pleading and awarding attorney's fees and costs to appellants' attorney. Appellants argue the timeliness of the amended pleading at issue was brought to the probate court's attention, and the probate court acted within its discretion in granting their request.

### A. Standard of Review and Applicable Law

Section 243 of the Texas Probate Code provides:

When any person designated as executor in a will or an alleged will, or as administrator with the will or alleged will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings. When any person designated as a devisee, legatee, or beneficiary in a will or an alleged will, or as administrator with the will or alleged will annexed, defends it or prosecutes any proceeding

in good faith, and with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not, he may be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings.

TEX. PROB.CODE ANN. § 243 (Vernon 2003).

■ Under Texas Rule of Civil Procedure 63, a party is permitted to file amended pleadings without leave of court up to seven days before trial unless the amended pleadings operate as a surprise to the opposing party. TEX.R. CIV. P. 63. However, the seven-day deadline does not apply when the trial court has entered a scheduling order pursuant to Texas Rule of Civil Procedure 166 setting a different deadline. *Id.; Roskey v. Continental Cas. Co.,* 190 S.W.3d 875, 879 (Tex.App.-Dallas 2006, pet. denied). Rule 166, which relates to pretrial conferences, provides that an order made at a pretrial conference hearing "shall control the subsequent course of the action." TEX.R. CIV. P. 166. However, the trial court retains authority under rule 166 to modify an order to prevent manifest injustice. *Id.* "Rule 166 recognizes the fundamental rule that a trial court has the inherent right to change or modify any interlocutory order or judgment until the time the judgment on the merits in the case becomes final." *Wil–Roye Inv. Co. II v. Washington Mut. Bank, FA,* 142 S.W.3d 393, 401–02 (Tex.App.-El Paso 2004, no pet.).

■ " 'The [trial] court is given wide discretion in managing its docket, and we will not interfere with the exercise of that discretion absent a showing of clear abuse.' " *Roskey,* 190 S.W.3d at 879 (quoting *Clanton v. Clark,* 639 S.W.2d 929, 931 (Tex.1982)). Accordingly, we review a trial court's enforcement of a scheduling order for an abuse of discretion. *Id.* (citing *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Sup-*

*ply Co.,* 177 S.W.3d 537, 542 (Tex.App.-Dallas 2005, no pet.); *Wil–Roye,* 142 S.W.3d at 401). A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules and principles. *Id.* at 879–80.

### B. Application of Law to Facts

■ The record shows the probate court's scheduling order originally set a trial date of February 5, 2007 and provided that the deadline to file amended pleadings was January 22, 2007. Trial was subsequently rescheduled for April 30, 2007, but the record shows no corresponding amendments to the scheduling order respecting amended pleadings. On April 20, 2007, without seeking leave of court, contestants filed the amended pleading at issue, in which they asserted for the first time their request for recovery of attorney's fees and expenses pursuant to section 243 of the Texas Probate Code. In his motion to strike appellants' amended pleading, appellee asserted surprise and contended the amended pleading was "filed in violation of the Court's previous Pre-trial Order."

During trial, appellee's counsel objected to testimony of Ms. Phillips pertaining to attorney's fees, asserting that rule 243 does not support the awarding of attorney's fees to appellants. Then, this exchange occurred:

PROBATE JUDGE: I'll allow the testimony. Does not mean I'm allowing the—does not mean I'm overruling your objection, though, [counsel].

APPELLEE'S COUNSEL: All right. My second objection was, the one I made this morning also, that the pleading was not filed timely and I just want to preserve that also.

PROBATE JUDGE: Yes sir. Thank you very much.

On appeal, appellee raises only the contention that the probate court erred in failing to grant his motion to strike. The record does not reflect any ruling by the probate court as to appellee's motion. In the probate court's May 14, 2007 order, contestants' attorney was awarded "the sum of $12,000.00 as necessary and reasonable attorney's fees for presenting the probate of the 1996 Will, in good faith, under Section 243 of the Texas Probate Code."

By awarding attorney's fees to contestants' attorney, the probate court not only "impliedly allow[ed]" the amended pleading at issue, as asserted by appellee, but also "implicitly modified" the probate court's scheduling order. *Trevino v. Trevino*, 64 S.W.3d 166, 170 (Tex.App.-San Antonio 2001, no pet.) (trial court implicitly modified docket control order by overruling plaintiffs' motion to strike defendants' late-filed motion for summary judgment) (quoting *Ocean Transp., Inc. v. Greycas, Inc.*, 878 S.W.2d 256, 262 (Tex.App.-Corpus Christi 1994, writ denied) (trial court impliedly modified scheduling order by denying motion to strike expert witnesses and did not abuse its inherent right to change or modify scheduling order)); *see also Wil-Roye*, 142 S.W.3d at 401–02 (trial court has inherent right to change or modify interlocutory order until judgment on merits in case becomes final). Contestants filed the amended pleading ten days before trial, which exceeded the seven-day requirement in the general rule governing the timing of amended pleadings. *See* Tex.R. Civ. P. 63. Although appellee asserted "surprise," he does not claim he did not receive adequate notice and opportunity to respond to contestants' amended pleading. *See Trevino*, 64 S.W.3d at 170. Accordingly, we conclude the probate court did not abuse its discretion in granting appellants' request for attorney's fees and costs pursuant to rule 243. Appellee's cross-point is decided against him.

## V. CONCLUSION

Reviewing all of the evidence under the appropriate standard, we conclude the evidence is factually sufficient to support the probate court's order. In addition, we conclude the probate court's granting of appellants' request for attorney's fees pursuant to rule 243 of the Texas Probate Code was not an abuse of discretion. Appellants' two issues and appellee's cross-point are decided against them.

The probate court's order is affirmed.