**Affirmed and Opinion Filed August 9, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-00054-CV

## BARBARA MEREDITH AND OXFORD TOWNHOMES ADDITION HOMEOWNER ASSOCIATION INCORPORATED, Appellants
## V.
## JASON ROSE, INDIVIDUALLY; JR ROSE DEVELOPMENT, LLC; HOMEOWNER'S MANAGEMENT ENTERPRISES, INC. D/B/A HOME OF TEXAS; AND WARRANTY UNDERWRITERS INSURANCE COMPANY, Appellees

On Appeal from the County Court at Law No. 2
Dallas County, Texas
Trial Court Cause No. CC-10-07847-B

## MEMORANDUM OPINION
Before Justices Fillmore, Stoddart, and Schenck
Opinion by Justice Stoddart

In this case, we decide whether the trial court properly granted summary judgment against claims by a homeowner and a homeowners association arising out of foundation damage to property in the owner's subdivision. After purchasing the townhome, the homeowner learned a home warranty had never issued. The homeowner sued the builder, his company, and the home warranty company that was to provide a warranty on her home. She brought claims for negligence, gross negligence, fraud, negligent misrepresentation, breach of contract, and violations of the insurance code. The homeowners association filed a negligence claim against the builder and his company for damage to the property based on its obligation to repair the

property in the subdivision. The trial court granted summary judgment in favor of the defendants. The homeowner and the homeowners association appeal. We affirm.

## BACKGROUND

On October 30, 2006, Barbara Meredith contracted with Oxford Townhomes, LLC, an entity related to Jason Rose and JR Rose Development, LLC, to purchase a townhome. Her contract referred to a sample home warranty from HOME of Texas that would be provided on the townhome. Meredith closed on her townhome on March 27, 2007, and received a sample warranty book at closing. Meredith thought the warranty would go into effect as soon as she closed on her townhome. However, her purchase contract with Oxford Townhomes provided that "validation of the warranty is not guaranteed, but is conditioned on the satisfactory completion of all required inspections, upon Seller's compliance with all of HOME's enrollment procedures, . . . and upon Seller remaining in good standing in the HOME Program." The sample warranty stated on the front page in bold, large print, and all capitals that "NO WARRANTY WILL BE ISSUED UNLESS THE BUILDER COMPLIES WITH ALL WARRANTY PROGRAM STANDARDS." The front page also provided that the owner would receive a validation sticker from HOME within ninety days of receiving the sample. The front page informed the owner, "You do not have a warranty without the validation sticker." Meredith never received a validation sticker for a warranty on her townhome.

All homeowners in the subdivision are members of the Oxford Townhomes Addition Homeowner Association, Inc. (the HOA), and Meredith was elected to the board of the HOA in 2007. In September of 2007, Todd Slaughter, one of the board members of the HOA, was concerned about the status of the warranties. In October or November of 2007, he spoke to representatives of Oxford Townhomes about the warranties and was told, "they were working on it." Warranty issues were addressed with Rose at board meetings in February 2008. On May 27,

2008, Slaughter contacted HOME directly and was informed that no warranties had been approved for the townhomes in the subdivision. Slaughter told the other board members, including Meredith, about the conversation sometime after May 27, 2008, but not immediately after. Meredith testified she learned from Slaughter there were no warranties, but did not say when she learned this information.

Soon after moving in, Meredith, along with other homeowners in the development, noticed drainage and foundation problems with their townhomes. There were also problems with certain retaining walls around the properties. The HOA and the homeowners demanded that Rose and his companies fix the problems, but were not satisfied with his response or his efforts. By April of 2009, the problems were serious enough that the HOA hired a foundation repair company to inspect the foundations and estimate the costs of repair.

Meredith filed suit against Oxford Townhomes, Jason Rose and JR Rose Development, LLC (collectively Rose), and the HOA on November 8, 2010. She alleged her foundation was damaged by construction defects caused by the builder and that the HOA failed to maintain her property. She alleged that Rose was the alter ego of and in a joint enterprise with Oxford Townhomes for the development and construction of the townhomes. Meredith sought to recover damages for the cost to repair her foundation and property under several causes of action, including negligence, breach of contract, and fraud. (During the course of this lawsuit, Oxford Townhomes filed for bankruptcy protection and was nonsuited from the case.)

The HOA filed a cross-claim against Rose for damages to the foundations of other townhomes and to retaining walls supporting the properties. The HOA contended it was required to maintain and repair the foundations and retaining walls under the declarations and covenants governing the subdivision. It alleged a cause of action for negligent design and construction of the foundations, drainage system, and retaining walls, among other claims.

On November 21, 2012, Meredith filed her third amended petition and joined Home Owners Management Enterprises, Inc. d/b/a HOME of Texas and Warranty Underwriters Insurance Company (collectively HOME) as defendants. She alleged that Rose acted as an agent for HOME, represented to her that the townhome was covered by a warranty issued by HOME, and provided her with a sample warranty from HOME. She relied on that representation to her detriment by closing on the townhome. Her causes of action against HOME were negligence and gross negligence, negligent misrepresentation, fraud and fraud in the inducement, and violations of the insurance code. In addition, Meredith pleaded that she did not discover and, in the exercise of reasonable diligence, would not have discovered the causes of action alleged in the third amended petition before the running of the applicable statute of limitations.

HOME filed a traditional and no-evidence motion for summary judgment on the grounds that Meredith's causes of action were barred by the statute of limitations, the statute of frauds, that the warranty was not a policy of insurance governed by the insurance code, that Rose was not an agent of HOME, and that Meredith did not justifiably rely on representations that were contrary to the written documents she received at closing. HOME asserted there was no evidence of the elements of agency, negligence, fraud and fraud in the inducement, negligent misrepresentation, insurance code violations, and justifiable reliance.

Meredith supplemented her petition after the motion for summary judgment was filed to add a claim for breach of contract, breach of warranty by sample, and spoliation of evidence. She also requested a continuance to conduct more discovery and the motion was reset for hearing on December 20, 2013. Meredith filed a supplemental response shortly before the hearing. The trial court granted HOME's motion for summary judgment without specifying the grounds for its ruling.

The case proceeded as to Rose and the other defendants. The case was called to trial on

April 8, 2014, but the trial court granted a mistrial during opening statements. Trial was reset to October 27, 2014. Rose filed a traditional and no-evidence motion for summary judgment on Meredith's and the HOA's claims in September 2014, arguing the HOA lacked standing to assert its claims and that all the claims were barred on several grounds, including the economic loss rule. The trial court granted Rose's motion for summary judgment and rendered a final judgment on November 6, 2014, incorporating the prior summary judgment for HOME.

On appeal, Meredith challenges the summary judgment in favor of HOME, argues the trial court erred by denying her motion to strike Rose's motion for summary judgment, and incorporates the HOA's brief regarding the summary judgment for Rose. The HOA appeals the denial of its motion to strike and the granting of summary judgment for Rose on the negligence claim.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

A no-evidence motion for summary judgment under rule 166a(i) must challenge specific elements of the opponent's claim or defense on which the opponent will have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The opponent must then present summary judgment evidence raising a genuine issue of material fact to support the challenged elements. *Id.* In reviewing a

–5–

no-evidence summary judgment motion, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). A genuine issue of material fact exists if the non-movant produces more than a scintilla of evidence supporting the existence of the challenged element. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004).

## ANALYSIS

### A. HOME Summary Judgment

Meredith alleged causes of action against HOME for negligence and gross negligence, negligent misrepresentation, fraud and fraud in the inducement, violations of the insurance code, breach of contract, and breach of warranty by sample. In support of these claims, Meredith alleged that Rose acted as the agent for HOME in his dealings with her.

HOME moved for summary judgment on the ground, among others, that all of Meredith's claims were barred by the statute of limitations. A defendant moving for summary judgment on the statute of limitations bears the burden of conclusively proving when the cause of action accrued and negating "the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Bruning v. Hollowell*, No. 05-13-01033-CV, 2015 WL 1291378, at *3 (Tex. App.—Dallas Mar. 23, 2015, pet. denied) (mem. op.).

When a cause of action accrues is normally a question of law. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011). In general, a cause of action accrues when a party has been injured by actions or omissions of another. *See Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) ("[A] cause of action can generally be said to accrue when the wrongful act effects an injury."). The discovery rule is "a very limited exception to statutes of limitations" that "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).

The discovery rule applies only "when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). Application of the discovery rule is "decided on a categorical rather than case-specific basis; the focus is on whether the *type* of injury rather than a *particular* injury was discoverable." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (per curiam); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). However, even if the discovery rule applies, it defers accrual of the causes of action only until the plaintiff discovered or in the exercise of reasonable diligence should have discovered the wrongful injury. *Emerald Oil*, 348 S.W.3d at 207; *KPMG*, 988 S.W.2d at 749; *Altai, Inc.*, 918 S.W.2d at 455.

None of the causes of action alleged against HOME have a statute of limitations longer than four years from the date the cause of action accrued.[1] Meredith did not bring her causes of action against HOME until November 21, 2012.

---

[1] Negligence, gross negligence, negligent misrepresentation, and violations of the insurance code are governed by a two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.002; TEX. INS. CODE ANN. § 541.162(a); *Bruning*, 2015 WL 1291378, at *3. Fraud, breach of contract, and breach of warranty are governed by a four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004.

Meredith's negligence, gross negligence, and negligent misrepresentation claims are based on the actions of Rose allegedly as agent for HOME. These claims seek to hold HOME vicariously liable for Rose's actions. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) (principal may be vicariously liable for torts of an agent acting within the scope of his agency). Thus, these causes of action against HOME accrued at the same time as they accrued against Rose.[2] There is summary judgment evidence that by April 2009, the foundation problems were obvious enough that the HOA hired a repair company to inspect all the foundations in the subdivision. Meredith was aware of her legal injury and that is was likely caused by the wrongdoing of another by at least that date. *See Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998); *Moreno*, 787 S.W.2d at 351. Although Meredith sued Rose on November 8, 2010, she did not sue HOME until more than two years later, on November 21, 2012. All claims against HOME with a two year statute of limitations are barred. *See Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344 n.3 (Tex. 1992) ("limitations begin to run when the fact of the injury is known, not when the alleged wrongdoers are identified").

Meredith's remaining claims are based on the existence of a home warranty. She alleged that Rose, as an agent of HOME, represented that her home was covered by a warranty issued by HOME and provided her with a sample warranty book outlining the terms of the warranty. Meredith contended she detrimentally relied on the representation "by completing the purchase and closing of the home." Meredith contracted to purchase the townhome from Oxford Townhomes in October 2006. The contract provided that validation of the warranty was not guaranteed. Meredith closed on the house and received a sample warranty book on March 27,

---

[2] Any contention that Meredith could not discover the agency relationship within the statute of limitations is belied by the fact that HOME was identified as the warranty company in her 2006 contract to purchase and in the sample warranty book she admits she received at closing in 2007. Meredith allegedly relied on the warranty book as evidence of Rose's authority to represent HOME.

2007. The sample warranty provided that a validation sticker was required for the warranty to go into effect and that she should receive the sticker within ninety days.

A contract, if any, was formed when Meredith purchased the townhome or within ninety days of when she received the sample warranty. Although Meredith closed on the townhome on March 27, 2007, and received the sample warranty book, she did not receive a validation sticker for a warranty within ninety days of her receipt of the sample. The terms of the sample clearly state that she did not have a warranty without a validation sticker. Thus, Meredith knew or should have known she did not receive a warranty as represented by the end of the ninety day period. Her causes of action for fraud, breach of contract, and breach of warranty accrued at this time.

Meredith pleaded the discovery rule as a defense to the statute of limitations. The discovery rule, however, does not apply to every injury alleged by a party. It is "a very limited exception to statutes of limitations.." *Altai, Inc.*, 918 S.W.2d at 455. The discovery rule applies only where the nature of the injury is both inherently undiscoverable and objectively verifiable. *See Wagner & Brown*, 58 S.W.3d at 734–35 ("An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence."). "Inherently undiscoverable" does not mean that a particular plaintiff, like Meredith, did not discover her injury within limitations. *Id*. Rather, we must decide whether the alleged injury is "the type of injury that generally is discoverable by the exercise of reasonable diligence." *HECI*, 982 S.W.2d at 886.

The type of injury in this case, the existence of a home warranty, is not inherently undiscoverable. A plaintiff who believes they have a warranty can inquire of the warranty provider about the status of the warranty. If the provider denies there is a warranty, the plaintiff has notice of her legal injury—the absence of warranty when there should be one. "Once a

claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'" *Gonzales v. Sw. Olshan Found. Repair Co.*, 400 S.W.3d 52, 58 (Tex. 2013) (quoting *Emerald Oil*, 348 S.W.3d at 207) (quoting *PPG Indus.*, 146 S.W.3d at 93)). After being put on notice of the alleged harm or injury-causing actions, the claimant must exercise reasonable diligence to investigate the suspected harm and file suit, if at all, within the limitations period. *Id.*; *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) (holding that the statute of limitations runs from the time fraud could have been discovered). Although Meredith pleaded the discovery rule, the record does not show her alleged injury was inherently undiscoverable.

However, HOME presented summary judgment evidence that Meredith knew or in the exercise of reasonable diligence should have known of her legal injury more than four years before she filed suit. The evidence indicates that the homeowners were concerned about the existence of home warranties in 2007 and early 2008. Even with Rose's alleged representations, Meredith should have known there was a problem when she did not receive a validation sticker within ninety days of her March 27, 2007 closing. The issue was discussed at board meetings of the HOA. When Slaughter asked representatives of Oxford Townhomes about the warranty, he was told they were working on it, not that the warranty would be issued. Slaughter called HOME in May 2008 and was told there were no warranties on any of the townhomes. Meredith admitted she learned there was no warranty from Slaughter. This evidence shows that the alleged injury—the absence of a home warranty—was readily discoverable by the exercise of diligence. Slaughter merely called HOME to verify whether he had a warranty. Nothing in the record shows Meredith could not have done exactly what Slaughter did within the relatively long

–10–

four-year statute of limitations for fraud, breach of contract, and breach of warranty.[3]

Thus, even if the discovery rule applies in this case, Meredith's claims are barred. "[T]he discovery rule does not linger until a claimant learns of actual causes and possible cures." *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004). Instead, it tolls limitations only until a claimant learns (or should have learned) of a wrongful injury. *Id.* at 93–94; *see also KPMG*, 988 S.W.2d at 749 (holding that "accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury," not when the plaintiff knows "the specific nature of each wrongful act that may have caused the injury").

We conclude HOME established the elements of its statute of limitations affirmative defense as a matter of law and that defense defeats all of the causes of action asserted by Meredith against HOME. We overrule all of Meredith's issues relating to the summary judgment for HOME.

## B. Rose Summary Judgment

Meredith and the HOA both complain about the denial of their motions to strike Rose's motion for summary judgment. In addition, Meredith adopted the HOA's issues challenging the summary judgment.[4] The HOA challenges the summary judgment for Rose only on the

---

[3] Meredith asserts an adverse inference based on HOME's alleged spoliation of evidence supports her position that a warranty should have issued. This contention is based on documents obtained during discovery indicating Rose submitted enrollment forms for the fifteen houses in the subdivision to HOME. HOME was unable to locate those enrollment forms and supporting documents. However, HOME representative testified that the documents submitted were insufficient for issuance of the warranty and HOME's inspector rejected the documents submitted by Rose. Furthermore, the evidence shows that Rose was required to increase his bond with HOME before it would issue warranties on the homes in the Oxford subdivision. Rose never responded to HOME's request for the information necessary to determine the amount of the necessary bond increase. Meredith's spoliation argument does not support her discovery rule defense. The evidence shows that in the exercise of reasonable diligence she should have known that HOME denied the existence of a warranty more than four years before she sued HOME.

[4] Meredith incorporated by reference the issues raised by the HOA regarding the summary judgment for Rose. *See* TEX. R. APP. P. 9.7. Although Meredith mentions only the HOA's "issues" regarding the summary judgment for Rose, we construe her brief liberally and consider this reference to also incorporate the arguments and authorities cited in the HOA's brief. *See* TEX. R. APP. P. 38.9. Thus, we will discuss the HOA's issues and arguments to the extent they relate to Meredith.

negligence cause of action asserted by both Meredith and the HOA. Accordingly, we affirm the summary judgment as to all other causes of action asserted against Rose.

### 1. Motions to Strike

Appellants argue Rose's motion for summary judgment was filed after the deadline set for dispositive motions in a May 24, 2013 scheduling order. That order set the case for trial on September 9, 2013, and set a deadline for dispositive motions on August 9, 2013, thirty days before that trial setting. However, the September 9, 2013 trial setting was reset on an agreed motion for continuance. The case was called for trial on April 8, 2014, but a mistrial was granted during opening statements. The case was reset for trial on October 27, 2014. The May 24, 2013 scheduling order was never expressly modified, although parties continued to amend pleadings, conduct discovery, and file motions after the deadlines set in that order. Rose filed his motion for summary judgment on September 10, 2014, more than thirty days before the trial setting, and a hearing was set for October 9, 2014. Appellants filed motions to strike the motion for summary judgment based on the deadline set in the May 24, 2013 scheduling order. The trial court denied the motions.

We review the trial court's enforcement of a scheduling order for an abuse of discretion. *In re Estate of Henry*, 250 S.W.3d 518, 526 (Tex. App.—Dallas 2008, no pet.) ("The [trial] court is given wide discretion in managing its docket, and we will not interfere with the exercise of that discretion absent a showing of clear abuse."). A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

The trial court has discretion to modify an interlocutory order at any time until final judgment is rendered and plenary power expires. *See* TEX. R. CIV. P. 329b; *Henry*, 250 S.W.3d at 527. By denying the motions to strike Rose's motion for summary judgment, the trial court

–12–

impliedly modified the scheduling order to allow the motion to be heard. *See Henry*, 250 S.W.3d at 527. Rose filed the motion more than thirty days before the trial setting and set it for hearing on more than twenty-one days' notice. *See* TEX. R. CIV. P. 166a(c). At the time the court denied the motions to strike, the case had been on file for almost four years, was fully developed, and had been called to trial once already. Appellants presented no evidence of harm resulting from the timing of the motion even if the prior scheduling order was still in effect. We conclude the trial court did not abuse its discretion by denying the motion.[5] *See Henry*, 250 S.W.3d at 527 (trial court did not abuse its discretion by impliedly modifying scheduling order to permit amended pleading).

Meredith raises an additional argument about the granting of her motion for leave to file a response to Rose's motion for summary judgment. She contends the trial court abused its discretion by not giving her additional time to file a response to the motion for summary judgment, even though it granted her motion for leave to file a response. However, Meredith never requested additional time to prepare and file a response. Instead, her motion for leave expressly adopted and incorporated the response and evidence filed by the HOA. The trial court granted that relief. Meredith's argument raises no error because the trial court granted all the relief she requested. *See* TEX. R. APP. P. 33.1(a).

We overrule Meredith's and the HOA's issues regarding the motion to strike Rose's motion for summary judgment.

### 2. Standing of the HOA

Rose asserted the HOA lacked standing to raise the negligence claim because it does not

---

[5] Meredith's brief on appeal does not challenge the denial of her alternative request for a continuance of the summary judgment hearing. However, on this record, the denial of Meredith's request for a continuance was not an abuse of discretion for the same reasons as the denial of the motion to strike. *See* TEX. R. CIV. P. 166a(g); *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 697 (Tex. App.—Dallas 2008, no pet.).

own any property that was damaged by the alleged negligence of Rose. The HOA contends it has standing because the declaration of covenants, conditions, and restrictions (CCR) that governs the HOA and the subdivision requires the HOA to repair, maintain, and restore the retaining walls and foundations allegedly damaged by Rose's negligence.

Standing is a component of subject matter jurisdiction. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443, 446 (Tex. 1993). A person has standing if (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) he is an appropriate party to assert the public's interest in the matter as well as his own. *See Hall v. Douglas*, 380 S.W.3d 860, 872–73 (Tex. App.—Dallas 2012, no pet.); *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 249 (Tex. App.—Dallas 2005, no pet.). To have standing, a plaintiff must be personally aggrieved by the alleged wrong, his "injury must be concrete and particularized, actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008); *see Nootsie Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996).

Rose argues the HOA lacks standing because it owns no property in the development and has no authority to represent individual owners. In the CCR, Oxford Townhomes, as owner of the subdivision, established the covenants, conditions, restrictions, and easements governing the property and the rights, duties, and responsibilities of the HOA. Oxford Townhomes covenanted to convey to the HOA fee simple title to the common area, defined as the property owned by the association for the common use and enjoyment of the owners. The CCR states that the common

–14–

area is shown on the plat of the property recorded in the real property records. In addition, the CCR provides that the HOA:

> shall have the right, duty and responsibility to: (i) acquire, administer, maintain and care for the Common Area and the Cross-Easement Areas including the maintenance and repair of the stone, concrete, and wood retaining walls at the rear of all Properties, . . . (v) repair and restore the exterior of, and any structural portions of, all Dwellings that are damaged, whether by casualty or other cause, . . . (viii) enforce this Declaration, and (ix) engage contractors, vendors, employees or agents as it deems necessary to carry out the forgoing purposes.

The HOA was also given the authority to levy assessments against the owners for "(b) The maintenance, repair and reconstruction, when needed or desirable, of (i) the structural portions of Dwellings located on Lots (such as the foundation, roof and weight-bearing walls)," and "(e) The employment of attorneys to represent the Association, when necessary or desirable[.]"

In support of his argument that the HOA owns no property, Rose submitted a plat of the subdivision that does not designate any common areas. However, the plat designates a ten-foot wide "utility, drainage & retaining wall maintenance" easement created "by this plat." The CCR requires the HOA to maintain and improve the common area, the "Cross-Easement Areas," and the retaining walls along the rear of the property. Thus, regardless of ownership, the HOA has the duty to maintain and repair the retaining walls, the cross-easement areas, and structures, including foundations of the townhomes, under the terms of the CCR.

The HOA contends the retaining walls and foundations were damaged by the negligence of Rose, thereby increasing its burden to repair and maintain those structures. Because it has the duty to maintain and repair the retaining walls and foundations, the HOA has a justiciable interest in the this case and is personally aggrieved by the alleged wrong. The duties of maintenance, repair, and reconstruction imposed on the HOA by the CCR create a justiciable interest in this suit. We conclude the HOA has standing to prosecute this lawsuit.

–15–

### 3. Economic Loss Rule

Rose moved for summary judgment on the ground that the negligence claim is barred by the economic loss rule. He argues appellants seek to recover repair costs for damage to the property that is the subject of their contracts with Oxford Townhomes and are limited to recovering on contract claims. Appellants assert their damages go beyond the economic damage related to the purchase and sale of individual lots.

The economic loss rule is actually several limited rules restricting recovery of economic damages in certain tort cases. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415–18 (Tex. 2011). The rules developed in negligence and product liability cases to limit recovery where the damages related only to the subject matter of a contract. *See LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 238–45 (Tex. 2014). In general, "the rule precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes v. Dallas Plumbing*, 445 S.W.3d 716, 718–19 (Tex. 2014) (per curiam) (citing *LAN/STV*, 435 S.W.3d at 243). In deciding whether the economic loss rule applies in this case, we examine the source of the defendant's duty and the nature of the claimed injury. *El Paso Marketing, L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 143 (Tex. 2012); *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 288 (Tex. App.—Dallas 2015, no pet.).

The duty asserted by appellants is not Rose's individual duty, but the duty he allegedly owed as the alter ego of or a member of a joint enterprise with Oxford Townhomes. Appellants seek to hold Rose personally liable for the negligence of Oxford Townhomes in designing and constructing the foundations, drainage systems, and retaining walls. But the duty Oxford Townhomes owed appellants arose out of the contractual agreements and documents concerning the subdivision property, such as Meredith's purchase contract and deed and the CCR. Thus, the

–16–

source of the duty in this case is the contractual relationship between appellants and Oxford Townhomes. Any claim for negligent damage to the property against Oxford Townhomes would be barred by the economic loss rule because Oxford Townhomes was a contracting party with Meredith and the HOA regarding the property. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). The economic loss rule bars appellants from seeking to hold Rose individually liable for breach of that same duty.

The nature of appellants' alleged injury also indicates the claim sounds in contract. *See Clark*, 455 S.W.3d at 289. They seek to recover the cost of repairing the property to the condition it should have been in under the terms of their agreements with Oxford Townhomes. Economic losses include costs of repair and replacement of defective products. *See Trebuchet Siege Corp. v. Pavecon Commercial Concrete, Ltd.*, No. 05-12-00945-CV, 2014 WL 4071804, at *6 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (mem. op.) (citing *Bass v. City of Dallas*, 34 S.W.3d 1, 9 (Tex. App.—Amarillo 2000, no pet.)).

We conclude the economic loss rule bars appellants' negligence claim against Rose. Because this ground is sufficient to support the trial court's summary judgment, we need not address the remaining issues raised in appellants' briefs. TEX. R. APP. P. 47.1.

CONCLUSION

For the foregoing reasons, we conclude appellants have not shown the trial court erred by granting summary judgment in favor of HOME and Rose. Accordingly, we affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

150054F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

BARBARA MEREDITH AND OXFORD
TOWNHOMES ADDITION
HOMEOWNER ASSOCIATION
INCORPORATED, Appellants

No. 05-15-00054-CV          V.

JASON ROSE, INDIVIDUALLY; JR ROSE
DEVELOPMENT, LLC; HOMEOWNER'S
MANAGEMENT ENTERPRISES, INC.
D/B/A HOME OF TEXAS; AND
WARRANTY UNDERWRITERS
INSURANCE COMPANY, Appellees

On Appeal from the County Court at Law
No. 2, Dallas County, Texas
Trial Court Cause No. CC-10-07847-B.
Opinion delivered by Justice Stoddart.
Justices Fillmore and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees Jason Rose, Individually; JR Rose Development, LLC;
Homeowner's Management Enterprises, Inc. d/b/a HOME of Texas; and Warranty Underwriters
Insurance Company recover their costs of this appeal from appellants Barbara Meredith and
Oxford Townhomes Addition Homeowner Association Incorporated.

Judgment entered this 9th day of August, 2016.